Tyrone **MARTIN**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 92–CO–1442.

District of Columbia Court of Appeals.

Argued March 10, 1994.

Decided Sept. 19, 1994.

Robert L. Wilkins, Public Defender Service, with whom James Klein, Samia Fam, and Roy Conn, Public Defender Service, were on the brief, for appellant.

Stacey L. Sovereign, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Elizabeth Trosman, Steven J. Roman, and J. Edward Agee, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, KING, and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

On appeal, Martin contends that the trial court erred in denying his motion to dismiss his indictment for first-degree murder while armed[1] and assault with intent to kill while armed[2] on collateral estoppel grounds. Martin maintains that his prior acquittal by a jury of carrying a pistol without a license,[3] on the facts of this case, necessarily meant that the jury decided, in his favor, the ultimate issue that he did not intend to participate in an armed assault of the victims. Therefore, he argues, the government was foreclosed from relitigating that issue at a subsequent trial. Finding appellant's arguments unpersuasive, we affirm.

## I.

Martin and his co-defendant, Stephen Brandon, were both charged with first-degree murder while armed, assault with intent to kill while armed, and carrying a pistol without a license. Martin was driving a car in which Brandon was a passenger. With Martin behind the steering wheel of the car, Brandon exited the vehicle and fired a handgun at Clayton Gray and Marvin Pegues.[4] Gray was struck in the chest and died a short time later, and Pegues escaped unharmed. During their jury trial, Brandon pled guilty to second-degree murder while armed[5] and assault with a dangerous weapon.[6] Martin moved for a mistrial, but the trial court denied his motion. The trial continued against Martin, and the jury convicted him of first-degree murder while armed and assault with intent to kill, but acquitted him of carrying a pistol without a license.

Martin appealed his convictions, and this court, in *Martin v. United States*, 606 A.2d 120 (D.C.1991) reversed his convictions and remanded the case for a new trial.[7] Before his new trial began, Martin filed a "Motion to Dismiss Indictment to Prevent Relitigation of Issues Barred by Collateral Estoppel." The trial judge denied his motion. Martin then

---

1. D.C.Code §§ 22–2401, –3202 (1989 & 1994 Supp.).

2. D.C.Code ·§§ 22–501, –3202 (1989 & 1994 Supp.).

3. D.C.Code § 22–3204 (1989 & 1994 Supp.).

4. The government's theory at trial was that Brandon was the principal and that Martin induced Brandon to shoot, and was therefore responsible as an aider and abettor. In his defense, Martin testified that, though he drove the car and stopped the car when instructed by Brandon, he sat in the car looking straight ahead and only heard the shots. Martin claimed that he did not ask about the shots and that he never saw any guns.

5. D.C.Code §§ 22–2403, –3202 (1989 & 1994 Supp.).

6. D.C.Code § 22–502 (1989).

7. The court held that the trial court's refusal to declare a mistrial to afford appellant the opportunity to present the testimony of co-defendant, Brandon, following Brandon's sentencing, was an abuse of discretion. *Martin, supra,* 606 A.2d at 122.

entered a conditional *Alford* [8] plea of guilty to manslaughter, reserving the right to appeal the trial judge's denial of his motion to dismiss. The trial judge then sentenced him to a term of incarceration of five to fifteen years, and Martin filed this appeal from the trial court's denial of his motion to dismiss on collateral estoppel grounds.

## II.

▮ The doctrine of collateral estoppel precludes the relitigation of an issue of ultimate fact between the same parties once that issue has been determined by a valid and final judgment. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). In a criminal proceeding, "the burden is on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Halicki v. United States*, 614 A.2d 499, 502 (D.C.1992) (internal quotation marks omitted) (quoting *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990)). Thus, Martin must demonstrate to this court that during his trial, the jury conclusively determined, in his favor, the specific issue of his intent to participate with Brandon in an armed assault of the victims.

This court recently articulated the standard of review for collateral estoppel claims in the criminal context:

> Unless the record of the prior proceeding affirmatively demonstrated that an issue involved in the second trial was *definitely determined* in the former trial, the possibility that it may have been does not prevent relitigation of that issue.

*Halicki, supra*, 614 A.2d at 502 (emphasis supplied) (citation and quotation marks omitted) (quoting *United States v. Smith*, 337 A.2d 499, 503 (D.C.1975)). We must examine *de novo* "the record, taking into account the pleadings, evidence, instructions, closing argument and the like and conclude whether a 'rational jury' could have acquitted based on an issue other than the one the defendant seeks to bar from reconsideration." *United States v. Felder*, 548 A.2d 57, 67 (D.C.1988).

Martin contends that by acquitting him of carrying a pistol without a license ("CPWL"), the jury must have rejected the testimony of government witnesses that appellant knew that Brandon had armed himself for the purpose of shooting the victims and transported Brandon to the crime scene knowing he possessed the guns for that purpose. Moreover, Martin argues that the jury must have found that he did not intend, or did not know Brandon intended, to shoot the victims, prior to the shooting, and therefore the decision on the issue of intent, having been resolved conclusively in his favor, precludes relitigation of the murder and assault ("AWIK") charges.

## III.

▮ Because of his convictions for murder and AWIK at his jury trial, Martin has failed to demonstrate that his acquittal for CPWL conclusively determined, in his favor, an ultimate fact central to the charges that were the subject of the retrial. Martin, however, contends that his convictions for murder and AWIK were attributable to erroneous aiding and abetting instructions, and therefore those convictions may not be relied upon as establishing the jury's failure to determine in his favor the issue of his intent to aid and abet the assault. According to appellant, the instructions were faulty because they improperly encouraged the jury to convict on murder and AWIK charges based on participation in a criminal venture after the shooting and because they failed to clearly instruct that an aider and abettor must have guilty knowledge before the crime.

During appellant's trial, the judge gave the standard Red Book instructions for aiding and abetting.[9] In addition, the court supple-

---

**8.** *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**9.** The trial court instructed the jury in pertinent part as follows:

> A person who advises, incites, or connives at an offense, aids or abets the principle offender, and [sic] is, therefore, punishable, in the eyes of the law as a principal....
>
> A person aids or abets another in the commission of a crime if he knowingly associates himself in some way with the criminal venture, with the intent to commit the crime, partici-

mented that standard instruction to make clear that the government had to prove that appellant had the requisite mental state and took some action or engaged in some conduct *before* the crime occurred. The court instructed the jury as follows:

> From this instruction that I have just given you, I think it should be evident to you that some advice, inciting, or conniving or action or planning or intent before the shooting ... is necessary.

> There can also be actions by the Defendant Martin that can occur as an aider and abettor after the shooting. There can be conduct before the shooting only, or there could be conduct before and after the shooting that might suffice in your mind to find that the Government has proved him guilty beyond a reasonable doubt as an aider or abettor. It would not be sufficient, however, if you found that the Government had shown beyond a reasonable doubt only that he had done something after the shooting. There has to be something before the shooting, as well, as after, or before the shooting alone.

This court has consistently held that "[t]he propriety of a trial court's instruction is to be determined from the context of the overall charge, without selecting and comparing separate phrases for literal content." *(Wayne) Carter v. United States*, 475 A.2d 1118, 1124 (D.C.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985); *see also (Ollie) Carter v. United States*, 531 A.2d 956 (D.C.1987) (acknowledging that second instruction blurred line between malice and intent, court nonetheless found that instructions viewed as a whole were not erroneous); *Powell v. United States*, 485 A.2d 596 (D.C. 1984) (instructions should be evaluated as a whole without placing undue emphasis on one sentence in the instruction), *cert. denied*, 474 U.S. 981, 106 S.Ct. 420, 88 L.Ed.2d 339 (1985). Considering the instructions as a whole and reading them in their entirety, we are satisfied that the trial court made clear

that the government had to prove appellant's guilty knowledge before the shooting and that appellant's actions after the shooting *alone* were *not* sufficient to establish the offense of aiding and abetting. Finding no error in the instructions, we agree with the government that the jurors' verdict of guilty on both assault and murder charges indicates that the issue of appellant's intent was *not* determined in his favor, but rather, against him. Therefore, we hold that collateral estoppel did not bar relitigation of the charges of murder and AWIK against appellant.

## IV.

■ Even assuming that the jury's verdict of guilty for AWIK and murder was not dispositive, Martin cannot distinguish his case from *Halicki, supra,* in which this court rejected a collateral estoppel claim quite similar to the present case because the appellant "failed to establish that the verdict constituted a conclusive resolution of a factual question presented at a retrial." *Halicki, supra,* 614 A.2d at 502.

Halicki travelled from Ohio to the District of Columbia with her two cohorts, Mitchell and Calloway, to search for Mitchell's estranged wife. When they arrived in the District, Mitchell produced a sawed-off shotgun and two pistols from a bag located in the trunk of his car. Halicki led Mitchell and Calloway to Mitchell's wife's apartment. The three approached the apartment door, with Mitchell carrying the shotgun and pistol. Halicki persuaded one of the occupants of the apartment to open the door, and Mitchell entered the apartment, shot and wounded one occupant, and killed another. Halicki did not have a gun at any point and fled the building when the shooting began.

Halicki was charged with aiding and abetting burglary, felony murder, premeditated murder, AWIK, and two counts of CPWL. At her first trial, the jury acquitted Halicki of one count of CPWL, but was unable to

---

pates in it as something he wishes to bring about, and seeks, by some action of his, to make it succeed.

Some conduct by the defendant, of an affirmative character in furtherance of a common criminal design or purpose is necessary. Mere

physical presence by the defendant is not, by itself, sufficient to establish guilt. However, mere presence is enough if it is intended to, and does, aid the primary actor.

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.02 (3d ed. 1978).

reach a verdict on any of the other charges. Like appellant in this case, Halicki argued on appeal that the not-guilty verdict on the CPWL charge conclusively determined an ultimate issue of fact central to each of the remaining charges which were subject to re-trial, and therefore under *Ashe, supra,* relitigation of that central fact was barred.[10] Finding that the jury's verdict was susceptible to a range of reasonable explanations, this court concluded that the verdict did not constitute a conclusive resolution of a factual issue that would be involved in a retrial of the remaining charges against Halicki and consequently rejected her collateral estoppel claim.

It logically follows from *Halicki* that Martin's acquittal on CPWL charges at his first trial was not a conclusive determination of any issue for which he could be retried. Here, as in *Halicki,* there are many rational explanations for the jury's final verdict. The acquittal on the pistol charge likely stemmed from the fact that there was no evidence presented at Martin's trial that he "facilitated the initial acquisition of the weapons" or "played any role in the continued dominion and control over them" by his co-defendant, Stephen Brandon. *Halicki, supra,* 614 A.2d at 503. Indeed, the government concedes in its brief that it failed to introduce any evidence that Martin ever handled, carried, or even touched the pistols, or that he gave Brandon the guns. The government's witnesses simply testified that Martin told Brandon to "go get the things" or "go get it,"

after Martin and the two victims, Gray and Pegues, had argued and traded obscenities at the liquor store earlier that evening, see notes 11 and 12, *infra.* It was the government's theory that appellant was telling Brandon to go get guns which were located in the apartment that appellant and Brandon shared. Therefore, the acquittal for CPWL "could reasonably be based upon an unwillingness by the jury to ascribe to appellant any role in the actual carrying of the pistols by the principal[ ]." *Halicki, supra,* 614 A.2d at 503.

Because the jury convicted Martin of the murder and AWIK charges, it must have based its acquittal on the CPWL charge on a finding other than that Martin did not intend, prior to the shooting, to participate with Brandon in an armed assault of the victims. There is competent evidence in the record to support the jury verdict adjudicating Martin guilty of murder and AWIK, but not guilty of CPWL. At trial, the government's evidence demonstrated that Martin was extremely upset by the statements made by the two victims,[11] that he threatened to kill them,[12] that, as stated previously, he told Brandon to "go get the things" or "go get it," that he drove the car in pursuit of the two victims,[13] and that he commented, after the shooting, "Man, I 'pose to get one" and "Man, you got the wrong guy." This evidence supports the jury's finding that appellant intended, prior to the shooting, to participate with Brandon in an armed assault of the victims. *See Lyons v. United States,* 645 A.2d 574, 584

---

10. Here, unlike in *Halicki,* the jury did not hang, but rather convicted Martin of AWIK and murder. Therefore, Martin's argument that the jury conclusively determined, in his favor, the specific issue of his intent to participate with Brandon in an armed assault of the victims, is even less persuasive than Halicki's, see Part III, *supra.*

11. Martin encountered the two victims in the early evening at a liquor store. Martin began to argue with one of the victims, Clayton Gray, in the liquor store because Gray was flirting with Martin's female companion, Valencia Stover. Stover testified that Martin said to Gray, "Man, why the hell you playing behind my damn back? I don't play that shit, anybody playing behind my damn back." Gray then apologized. At that time, the other victim, Marvin Pegues, approached and asked what was going on. According to Stover, when he heard Gray apologiz-

ing, Pegues told Gray, "Man, you don't owe that man no explanation. F that man. He could suck my [d]ick." Martin became angry and told Pegues, "Suck your dick? You're going to suck your own dick because don't nobody tell me to suck their dick."

12. Pegues testified that Martin said "he would kill [Gray and him]," and that Martin was saying "come outside, he would take both of us."

13. According to Valencia Stover, who was in the car that Martin was driving and in which Brandon was a passenger, someone in the car spotted Gray and Pegues and said, "There they go." Stover then testified that Martin drove the car farther down Wheeler road, made a U-turn, and screeched to a stop next to Gray and Pegues, at which time Brandon exited the car and fired shots at the two men.

(D.C.1994) ("[p]roof of presence at the scene of a crime plus conduct which designedly encourages or facilitates a crime will support an inference of guilty participation in the crime as an aider and abettor") (citation omitted).

If the jury had concluded that Martin did not intend to assault the victims, as he urges us to hold, then the jury would not have returned a verdict of guilty on the murder and AWIK charges. "Accepting the appellant's argument would require us to assume the jury acted inconsistently, reaching opposite findings on the same issue in the different counts." *United States v. White,* 290 U.S.App.D.C. 269, 272, 936 F.2d 1326, 1329, *cert. denied,* — U.S. —, 112 S.Ct. 381, 116 L.Ed.2d 332 (1991). As we are reluctant to attribute such inconsistency to the jury, we conclude that the jury could reasonably have found that Martin did not aid and abet Brandon's commission of the CPWL charge, but nevertheless conclude that he aided and abetted the murder and AWIK. Thus, we find that the verdict of acquittal on CPWL charges did not conclusively determine, in Martin's favor, the issue of his intent to aid and abet the assault on the two victims.

Accordingly, the judgment of convictions is

*Affirmed.*

KING, Judge, concurring:

I agree with the court that the trial judges's instructions on aiding and abetting were adequate for the reasons stated and that the murder and assault with intent to kill convictions were thus sustainable. I also agree that because he was convicted of those offenses, Martin has failed "to demonstrate that his acquittal for CPWL conclusively determined, in his favor, the ultimate fact central to the charges that were the subject of the retrial."[1] Post at 1137. Therefore, I join Parts I, II and III of the court's opinion. In short, I understand the court to be holding, and I join on that basis, that in so-called mixed verdict cases, when there has been a

conviction of some counts and an acquittal of others, that collateral estoppel principles can never bar re-trial with respect to any of the counts upon which there was a conviction.[2] *See United States v. Powell,* 469 U.S. 57, 69, 105 S.Ct. 471, 479, 83 L.Ed.2d 461 (1984) (a defendant convicted of any count of an indictment cannot challenge that conviction based on a not guilty verdict on another count of that indictment at the same trial); *cf. United States v. Felder,* 548 A.2d 57, 69 (D.C.1988) (Gallagher, J., dissenting). Therefore, I think it unnecessary to undertake the analysis found in Part IV.

---

1. Counsel for Martin conceded at oral argument that if we rule adversely to him on the aiding and abetting issue, as we have, then that ruling would be dispositive against him on the collateral estoppel issue.

2. Of course, as we have held in this case, the evidence at trial must have been sufficient to support the convictions.